FILED
U.S. DISTRICT COURT
BRUNSWICK DIV.

2011 NOV 28   AM 8:41

CLERK _____
SO. DIST. OF GA.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## BRUNSWICK DIVISION

DANNY L. JAMES, SR.,                          )
                                               )
    Plaintiff.                            )
                                               )
v.                                             )          CIVIL ACTION NO.:
                                               )
                                               )          CV211 - 200
WRIGHT MEDICAL TECHNOLOGY,    )
INC., a Delaware corporation; and    )
WRIGHT MEDICAL GROUP INC.,      )
a Delaware corporation,                   )
                                               )
    Defendants.                          )

## COMPLAINT AND JURY DEMAND

Plaintiff, Danny L. James, Sr., hereby files this Complaint against Defendants WRIGHT MEDICAL TECHNOLOGY, INC., a Delaware Corporation and WRIGHT MEDICAL GROUP, INC., (hereinafter collectively sometimes referred to "Defendants" or "Wright"), respectfully showing the Court the following:

### INTRODUCTION AND SUMMARY OF ACTION

1.      For more than two years, Defendants have known that their hip replacement device - the Wright Medical PROFEMUR® Total Hip System with

Conserve Femoral Total A-Class® Head with BFH®[1] Technology and Conserve Plus Cup (collectively the "ProFemur® Hip Implant System") – was prone to fail within a couple of years of implantation despite the fact that hip implant devices typically last more than twenty years.  Wright has known that the implant's metal "ball" and "socket" bearings that make up the ProFemur® Hip Implant System's hip-joint generates metal debris over time from wear and tear that can spread throughout the patient's surrounding bone and tissue.  As a result of these defects, patients that received these implanted devices endured, or will endure, unnecessary pain and suffering; debilitating lack of mobility; inflammation causing damage or death to surrounding tissue and bone; metalosis; toxicity; and a subsequent more difficult revision surgery to replace the faulty devices giving rise to more pain and suffering, a prolonged recovery time, and an increased risk of complications and death from surgery.  Rather than recall the ProFemur® Hip Implant System upon first receiving notice in 2005 of complaints made to the F.D.A. of the defects discussed above, Defendants continue to aggressively market the ProFemur® Hip Implant System, claiming that it is a safe and effective hip replacement system.

2.     Plaintiff's suffering could easily have been prevented.  Plaintiff and those like him would not have suffered from unnecessary pain, debilitation, hospitalization, and the need to undergo subsequent revision surgery had

---

[1]BFH is an acronym for Big Femoral Head.

Defendants warned the public of the dangers of the ProFemur® Hip Implant System in 2005 when hundreds of complaints began being made to the F.D.A. regarding the device's failures. Because Defendants failed to warn the public and/or failed to take the affirmative step of recalling the ProFemur® Hip Implant System, Plaintiff will now live with the consequences of this faulty device for the rest of his life.

**PARTIES**

3.      At all relevant times, Danny L. James, Sr. was a resident and citizen of the State of Georgia, residing in 114 Garlington Circle, Waycross, Georgia.

4.      Defendant Wright Medical Technology, Inc. (hereinafter "Wright Technology") is a corporation organized under laws of the State of Delaware, with its principal place of business located in Arlington, Tennessee, and as such is a citizen of both the State of Tennessee and the State of Delaware.  Defendant Wright Technology is registered to do business in the State of Georgia, and may be served with process by serving its registered agent for service, Corporation Service Company, at 40 Technology Parkway South, #300, Norcross, Georgia, 30092.

5.      Defendant Wright Medical Group, Inc. (hereinafter "Wright Group") is a corporation organized under the laws of the State of Delaware, with its headquarters and principal place of business located in Arlington, Tennessee, and as such is a citizen of both the State of Tennessee and the State of Delaware.

3

Defendant Wright Group is authorized to do business in Tennessee; and may be served with process by serving its registered agent for service, Corporation Service Company, at 2908 Poston Avenue, Nashville, TN 37203-1312.

6.   Defendant Wright Technology is wholly owned subsidiary of Delaware Wright Group.

7.   Defendant Wright Technology and defendant Wright Group shall hereinafter, jointly and severally, be referred to as "Defendant(s)."

## STATEMENT OF JURISDICTION & VENUE

8.   This Court possesses diversity jurisdiction pursuant to 28 U.S.C. § 1332.  The amount in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs, as this action involves a products liability claim by a severely injured party.   There is complete diversity of citizenship between the parties.

9.   Defendant is subject to the Court's personal jurisdiction because at all relevant times hereto, Defendant transacted business and continues to transact business in the State of Georgia.  Defendant has sufficient minimum contacts with Georgia such that exercise of jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice.

10.   Defendant is a corporation, this it is deemed to reside in any judicial district in which it is subject to the personal jurisdiction.  28 U.S.C. § 1391(c).  As

4

Defendant is subject to personal jurisdiction in Georgia, venue is proper in this Court. 28 U.S.C. § 1391(a)(1).

11.     At all times relevant hereto, Defendants developed, manufactured, advertised, promoted, marketed, sold, and/or distributed the defective Wright ProFemur-Z® Total Hip System throughout the United States.

## FACTS

12.     This products liability lawsuit seeks compensatory damages on behalf of Plaintiff Danny L. James, Sr., who was implanted on October 26, 2004, with an artificial hip replacement system known as the Wright ProFemur-Z® Total Hip System, designed, manufactured, marketed, distributed, and sold by Defendants.

13.     The Wright ProFemur-Z® Total Hip System included an acetabular cup component called the Wright CONSERVE® PLUS cup, which was also utilized in Plaintiff's arthroplasty.  Plaintiff shall hereinafter refer to The Wright CONSERVE® PLUS cup and its components, jointly and serverally, as the "Wright Cup."

14.     The hip joint is where the femur connects to the pelvis.  The joint is made up of the femoral head (ball like structure at the top of the femur) rotating within the acetabulum (a cup-like structure at the bottom of the pelvis).  In a healthy hip, both the femur and the acetabulum are strong and the rotation of the bones against each other is cushioned and lubricated by cartilage and fluids.  Over

time, age and wear break down the cartilage. This forces the bone of the femur to rub directly against the bone of the acetabulum, and it causes severe pain and immobility.

15.    A total hip replacement replaces the body's natural joint with an artificial one, usually made out of metal and plastic.   A typical total hip replacement system consists of four separate components:  (1) a femoral stem, (2) a femoral head, (3) a liner, and (4) an acetabular shell.  The surgeon hollows out a patient's femur bone and the femoral stem is implanted.  The femoral head is a metal ball that is fixed on top of the femoral stem.  The femoral head forms the hip joint when it is placed inside the polyethylene liner and acetabular shell.

16.    The Wright Cup is a modular design that provides an option which puts the metal Conserve femoral ball directly in contact with the metal Conserve acetabular cup which produces a large amount of metal on metal wear debris.

17.    The Wright Cup and related components were approved under a process by the Food and Drug Administration (hereinafter referred to as the "FDA") governed by Section 510(k) of the Food, Drug and Cosmetic Act.  A medical device submitted under Section 510(k) does not have to go through the rigors of a clinical study to gain approval by the FDA.

6

18.     The components of the Wright Cup were approved for use by the FDA through the 510(k) approval process whereas the device demonstrated substantial equivalence to a predicate medical device.

19.     Wright claims that "[t]he ProFemur® Hip Implant System provides surgeons with a modular approach to total hip arthroplasty.  Proximal and distal segments allow easy matching of implants to host bone.  Splined, tapered and plasma-sprayed components provide optional distal fixation methods.  The unique modular neck component allows soft tissue balancing and easy restoration of the hip joint center of rotation. This modular approach to implant design provides surgeons with unsurpassed options for primary and revision hip surgery.  The PROFEMUR® Hip System has been an evolutionary design. Today Wright Medical offers the ProFemur® Hip Implant System with enhanced instruments and additional stem designs to provide customers with a comprehensive implant system to appeal to virtually any physician's preference in implant selection.  The slim neck geometry allows for increased range of motion over other implant systems, while the polished surface will reduce debris generation should impingement occur.  Femoral necks, when combined with cobalt chrome femoral heads, offer 110 possible centers of rotation on each implant."[2]

---

[2] http://www.wmt.com/physicians/products/hips/profemurtotalhipsystem.asp.

20.     The Wright Cup is designed with a flexible neck. The neck of the implant can be adjusted for length, allowing surgeons to create a more specialized fit for each patient.  According to Wright, the design should allow the implant to better match to host bones and allow soft tissues to balance and restore the hip joint center of rotation.  However, the design that is supposed to make the Wright Cup revolutionary – causing the device neck to be subject to bend – is a feature that has caused it to fail. The bend in the neck of the implant increases the potential for corrosion, fretting and failure, during normal use.

21.     The Wright Cup was purchased in Georgia, implanted in Georgia, failed in Georgia and was removed during surgery in Georgia.

22.     Prior to, on, and after October 26, 2004, Wright knew that the Wright Cup was defective and harmful to consumers and that these components had an unacceptable failure and complication rate.   Wright had a legal and moral obligation to stop selling the products and to notify physicians who had implanted the Wright Cup to be aware of the propensity for the Wright Cup to detach, disconnect, and/or loosen from the acetabulum, and for some patients to develop adverse reactions to high levels of metal debris generated by normal use of the Wright Cup.

23.     Plaintiff suffered pain in his right hip continuously following his surgery.

8

24     On or about June 15, 2010, Plaintiff was forced to undergo a revision surgery on his right hip.  Plaintiff's revision surgery revealed that the Wright Cup had become grossly loose.

25.     Plaintiff continues to suffer from injuries of a permanent and lasting nature and discomfort as a result of the Wright Cup.

26.     Plaintiff is permanently impaired in his ability to financially provide for himself and his family as a result of the Wright Cup.

27.     Plaintiff will need many years of continuous medical treatment as a direct and proximate cause of his Wright Cup.

## COUNT I - STRICT PRODUCT LIABILITY

28.     Plaintiff incorporates by reference paragraphs 1 through 27 of this Complaint as if fully set forth herein and further alleges as follows.

29.     On and prior to October 26, 2004, Defendants were engaged in the business of designing, manufacturing, marketing, distributing, and selling orthopaedic hip implants and did design, manufacture, distribute, market, and sell the Wright Cup.  O.C.G.A. § 51-1-11.1.

30.     Defendants each had a duty to place into the stream of commerce, manufacture, distribute, market, promote, and sell the Wright Cup so that it was neither defective or unreasonably dangerous when put to the use for which it was designed, manufactured, distributed, marketed, and sold.  O.C.G.A. § 51-1-11.

9

31.     Defendants each did in fact manufacture, sell, distribute, supply, and/or promote the Wright Cup to Plaintiff and his implanting physician. Defendants expected the Wright Cup they were selling, distributing, supplying, manufacturing, and/or promoting to reach, and which did in fact reach, implanting physicians and consumers in the State of Georgia, including Plaintiff and his implanting physician, without substantial change in the condition.

32.     At the time the Wright Cup left the possession of Defendants and the time the Wright Cup entered the stream of commerce, it was in an unreasonably dangerous or defective condition.  These defects include, but are not limited to, the following:

(a)     The Wright Cup was not reasonably safe as intended to be used;

(b)     The Wright Cup had an inadequate design for the purpose of hip replacement;

(c)     The Wright Cup contained unreasonably dangerous design defects, including an inherently unstable and defective design which resulted in an unreasonably high probability of early failure;

(d)     The Wright Cup hip implant design puts the metal femoral ball directly in contact with the metal acetabular cup which produces a large amount of metal on metal wear debris;

10

(e)     The Wright Cup's unstable and defective design resulted in a hip prosthesis which had risks which exceeded the benefits of the medical device;

(f)     The Wright Cup has a propensity for the acetabular cup to detach, disconnect and/or loosen from the acetabulum, and for some patients to develop adverse reactions to high levels of metal debris generated by normal use of the Wright Cup;

(g)     The Wright Cup's unstable and defective design resulted in a hip prosthesis which was more dangerous than the ordinary consumer would expect;

(h)     The Wright Cup failed to perform in a manner reasonably expected in light of its nature and intended function and subjected the Plaintiff to an unreasonable risk of harm beyond that contemplated by an ordinary person;

(i)     The Wright Cup was insufficiently tested;

(j)     The warnings to Plaintiff and Plaintiff's implanting physician about the dangers the Wright Cup posed to consumers were inadequate. Examples of the inadequacy of Defendants' warnings include, but are not limited to, one or more of the following particulars:

11

   i.  The Wright Cup contained warnings insufficient to alert Plaintiff and Plaintiff's physicians as to the risk of adverse events and/or reactions associated with the Wright Cup, subjecting Plaintiff to risks which exceeded the benefits of the Wright Cup;

   ii.  The Wright Cup contained misleading warnings emphasizing the efficacy of the Wright Cup while downplaying the risks associated with it, thereby making use of the Wright Cup more dangerous than the ordinary consumer would expect;

   iii.  The Wright Cup contained insufficient and/or incorrect warnings to alert consumers, including Plaintiff, through their prescribing physicians regarding the risk, scope, duration, and severity of the adverse reactions associated with the Wright Cup;

   iv.  The Wright Cup did not disclose that it was inadequately tested;

   v.  The Wright Cup failed to convey adequate post-marketing warnings regarding the risk, severity, scope and/or duration of the dangers posed by the Wright Cup;

   vi.  The Wright Cup failed to contain instructions sufficient to alert consumers to the dangers it posed and to give them the information necessary to avoid or mitigate those dangers.

33.    Plaintiff Danny L. James, Sr. used the Wright Cup for its intended purpose, *i.e.*, hip replacement.

34.    Plaintiff Danny L. James, Sr. could not have discovered any defect in the Wright Cup through the exercise of due care.

35.    Defendants, as designers, manufacturers, marketers, and distributors of medical devices are held to the level of knowledge of an expert in their field.

36.    Plaintiff and his implanting physician did not have substantially the same knowledge as Defendants who were the designer, manufacturer, or distributor.

37.    The Wright Cup is an unreasonably dangerous product. Defendants knew or should have known of the dangerous condition of the product and therefore should not have marketed, sold, and/or placed it on the market. A reasonably prudent manufacturer aware of the dangerous condition posed by the product would not have marketed, sold, and/or placed these products on the market.

38.    As a direct and proximate result of Wright's defective design, failure to warn, lack of quality control and other wrongful conduct, Plaintiff Danny L. James, Sr. has sustained and will continue to sustain severe physical injuries, severe emotional distress, mental anguish, economic losses and other damages. Plaintiff Danny L. James, Sr. has expended and will expend money for medical

13

bills and expenses, and he has been unable to and will in the future be unable to attend to his normal affairs and duties for an indefinite period of time.

39.     Plaintiff Danny L. James, Sr. is entitled to compensatory damages against Defendants for strict products liability in an amount to be proven at trial, together with costs of this action.

## COUNT II - NEGLIGENCE

40.     Plaintiff incorporates by reference paragraphs 1 through 39 of this Complaint as if fully set forth herein and further alleges as follows.

41.     At all times relevant, it was the duty of Defendants to exercise due care in designing, testing, manufacturing, distributing, marketing, promoting, and selling the Wright Cup such that it would be reasonably safe for its intended use. O.C.G.A. § 51-1-2.

42.     Defendants' negligence in the designing, testing, manufacturing, distributing, marketing, promoting and selling of the Wright Cup includes, but is not limited to, the following:

      (a)     the Wright Cup acetabular component was negligently designed

      (b)     the Wright Cup acetabular components were negligently designed creating insufficient coverage of the femoral component;[3]

---

[3] *Id.*

14

(c)     the Wright Cup acetabular components were negligently designed and manufactured creating increased metal on metal wear between the femoral component and the acetabular component;[4]

(d)     the Wright Cup was negligently designed and manufactured creating increased metal corrosion particularly at the junction of the femoral head component and the neck of the femoral stem;[5]

(e)     the Wright Cup was negligently designed and manufactured creating an unacceptable differential hardness of the cup and femoral head that is caused by among other things the technique and/or manner of the heat treatment of the femoral head and the acetabular cup;[6]

(h)     Wright committed manufacturing errors, including, but not limited to, component size tolerances out of specification and not within acceptable industry standards.

---

[4]Langton DJ, Jameson SS, Joyce TJ, Hallab NJ, Natu S, Nargol AV, Early failure of metal-on-metal bearings in hip resurfacing and large-diameter total hip replacement: A consequence of excess wear. *J. Bone Join Surg* [Br]. 2010 Jan; 92(1):38-46.

[5]See generally Meftah, Morteza; Nicolaou, Nicos; Rodriguez, Jose A, Metal allergy response to femoral head-neck corrosion after total hip replacement, Current Orthopaedic Practice, September/October 2010, Vol. 21, Issue 5, pp. 530-533.

[6]Kinbrum A, Unsworth A, The wear of high-carbon metal-on-metal bearings after different heat treatments. *Proc Ins Mech Eng H* 2008; 222:887-95.

(i)    Wright's design that is supposed to make the Wright Cup revolutionary – causing the device neck to be subject to bend – is a feature that has caused it to fail. The bend in the neck of the implant increases the potential for corrosion, fretting, and failure during normal use.

(j)    Wright, in advertising, marketing, promoting, packaging, and selling the Wright Cup negligently misrepresented material facts regarding their safety, efficacy and fitness for human use by claiming the Wright Cup was fit for its intended purpose when, in fact, it was not;

(k)    Wright, in advertising, marketing, promoting, packaging, and selling the Wright Cup, negligently misrepresented material facts regarding its safety, efficacy, and fitness for human use by claiming the Wright Cup had been adequately and reliably tested when, in fact, it had not;

(l)    Wright, in advertising, marketing, promoting, packaging, and selling the Wright Cup, negligently misrepresented material facts regarding its safety, efficacy, and fitness for human use by claiming the Wright Cup was safe and effective and was appropriate for use by human beings when, in fact, it was not;

(m)    Wright, in advertising, marketing, promoting, packaging, and selling the Wright Cup, negligently misrepresented material facts regarding its safety, efficacy, and fitness for human use by claiming the risk of serious

16

adverse events and/or effects from the Wright Cup was comparable to that of other hip replacement systems when, in fact, it was not;

(n)     Wright, in advertising, marketing, promoting, packaging, and selling the Wright Cup, negligently misrepresented material facts regarding its safety, efficacy, and fitness for human use by claiming the Wright Cup had not caused or contributed to serious adverse events and/or effects requiring the premature explants of the device when, in fact, it had.

43.     Wright knew or had reason to know that Plaintiff as a member of the general public for whose use the Wright Cup was placed into interstate commerce, and who would be likely to use the Wright Cup in a manner described in this Complaint.

44.     Wright knew or reasonably should have known of the danger associated with the manner and circumstances of Plaintiff's foreseeable use of the Wright Cup, which dangers would not be obvious to the general public.

45.     As a direct and proximate result of one or more of the foregoing wrongful acts or omissions by Defendants, the Wright Cup caused Plaintiff to suffer and sustain injuries of a permanent nature.  Plaintiff was caused to and will in the future be caused to endure pain and suffering in body and mind.  In an endeavor to cure his said injuries, Plaintiff was caused to and will in the future be caused to expend money for medical care.  Furthermore, Plaintiff was unable to

17

and will in the future be unable to attend to his normal affairs and duties for an indefinite period of time.

46.    Plaintiff is entitled to recover compensatory damages against Defendants for negligence in an amount to be proven at trial, together with costs of this action.

## COUNT III - BREACH OF WARRANTY

47.    Plaintiff incorporates by reference paragraphs 1 through 46 of this Complaint as if fully set forth herein and further alleges as follows.

48.    Plaintiff currently is not in possession of any document relating to representations, warnings, and/or communications made by Defendants in this action.  Plaintiff reserves the right to present evidence in support of this claim which is not presently in his possession, but which is not necessarily limited to: instruction for use manuals; all written material or information provided on and/or within any and all packaging associated with Plaintiff's device; manufacturer's labels, package inserts; Adverse Event Reports; clinical trial data; medical literature; medical research findings and opinions; medical publications; advertisements; sales, prescription and adverse event report databases; and communications from Defendants in this action, including said Defendants' employees, officers, directors, agents, representatives, contractors and business associates, to the public, medical community, Plaintiff's prescribing physician, and

18

Plaintiff. Plaintiff is not in possession of documents as described herein, however, upon information, knowledge, and belief, Plaintiff believes the documents, instruments and/or evidence stated above are in the possession of Defendants.

49.    At the time Defendant marketed, sold, and/or distributed the Wright Cup, it knew that the hip device was intended for human use.

50.    At the time Defendant marketed, sold, and/or distributed Wright Cup, Plaintiff was a foreseeable user of the device.

51.    At the time Defendant marketed, sold, and/or distributed the Wright Cup, it expressly and/or impliedly warranted that the hip, including all of its component parts, were safe and merchantable for their intended use. O.C.G.A. §§ 11-2A-210, 11-2-314.

52.    Plaintiff and his implanting physician reasonably relied upon the representations that the Wright Cup was of merchantable quality and safe for its intended uses.

53.    Plaintiff used the Wright Cup for its intended purpose.

54.    Contrary to their express and implied warranties, at the time Defendants marketed, sold, and/or distributed the Wright Cup, it was not of merchantable quality or safe for its intended use as described above.

55.    As a direct and proximate result of one or more of the foregoing wrongful acts or omissions by Defendants, the Wright Cup caused Plaintiff to

19

suffer and sustain injuries of a permanent nature. Plaintiff was caused to and will in the future be caused to endure pain and suffering in body and mind. In an endeavor to cure his said injuries, Plaintiff was caused to and will in the future be caused to expend money for medical care. Furthermore, Plaintiff was unable to and will in the future be unable to attend to his normal affairs and duties for an indefinite period of time.

56.    Plaintiff is entitled to recover compensatory damages against Defendants for breach of warranty in an amount to be proven at trial, together with costs of this action.

## COUNT IV- NEGLIGENT MISREPRESENTATION

57.    Plaintiff incorporates by reference paragraphs 1 through 56 of this Complaint as if fully set forth herein and further alleges as follows.

58.    To prove negligent misrepresentation, the Plaintiffs must prove the following elements: (a) The defendant's negligent supply of false information to a foreseeable person, known or unknown; (b) Such person's reasonable reliance upon that false information; and (c) Economic injury proximately resulting from such reliance. *Marquis Towers, Inc. v. Highland Group*, 593 S.E.2d 903 (Ga. Ct. App. 2004).

59.    At all times material hereto, Defendants misrepresented that the Wright Cup in question was safe for its intended use. Defendants knew or should

20

have known of the use for which the Wright Cup was intended and the serious risks and dangers associated with such use of the Wright Cup.

60. Defendants owed a duty to treating physicians and to the ultimate end-users of the Wright Cup, including Plaintiff Danny L. James, Sr., to accurately and truthfully represent the risks of the Wright Cup. Defendants breached that duty by misrepresenting and/or failing to adequately warn Plaintiff Danny L. James, Sr.'s physician, the medical community, Plaintiff Danny L. James, and the public about the risks of the Wright Cup, which Defendants knew or in the exercise of reasonable diligence should have known. These risks include, but are not limited to, the failure rates, the metal debris, and the likelihood of painful and debilitating revision surgery.

61. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff Danny L. James sustained and will continue to sustain severe physical injuries, severe emotional distress, mental anguish, economic losses, and other damages.

62. Plaintiff Danny L. James is entitled to recover compensatory damages for negligent misrepresentation from Defendants in an amount to be proven at trial, together with costs of this action.

## COUNT V – FRAUD AND SUPPRESSION AGAINST DEFENDANTS

63.     Plaintiffs incorporate by reference paragraphs 1 through 62 of this Complaint.

64.     Defendants owed Plaintiff Danny L. James a duty to disclose the known risks and/or defects in the Wright Cup as set forth in this Complaint. O.C.G.A. 23-2-53.

65.     Those risks and/or defects were material facts upon which Plaintiff Danny L. James would have reasonably relied is making a decision as to whether to consent to the implant of the Wright Cup, had they been disclosed.

66.     With full knowledge of said risks and/or defects, Defendants consciously, deliberately, and intentionally breached their duties to Plaintiff Danny L. James by failing to disclose those material facts to Plaintiff Danny L. James. O.C.G.A. § 51-6-2.

67.     As a direct and proximate consequence of said suppression, Plaintiff Danny L. James sustained and will continue to sustain severe physical injuries, severe emotional distress, mental anguish, economic losses and other damages.

68.     Plaintiff Danny L. James is entitled to recover compensatory damages for fraud and suppression against Defendants in an amount to be proven at trial, together with costs of this action.

## <u>COUNT VI – CIVIL CONSPIRACY AGAINST DEFENDANTS</u>

69.   Plaintiff incorporates by reference paragraphs 1 through 68 of this Complaint.

70.   To recover damages for a civil conspiracy claim, a plaintiff must show that two or more persons, acting in concert, engaged in conduct that constitutes a tort; absent the underlying tort, there can be no liability for civil conspiracy. *Golden Atlanta Site Development, Inc. v. Nahai*, 683 S.E.2d 166 (Ga. Ct. App. 2009).

71.   Each of the Defendants had a duty to Plaintiff Danny L. James to disclose the known risks and/or defects in the Wright Cup as set forth in this Complaint.

72.   Those risks and/or defects were material facts upon which Plaintiff Danny L. James would have reasonably relied in making a decision as to whether to consent to the implant of the Wright Cup, had they been disclosed.

73.   The Defendants have conspired together to actively suppress these material facts from Plaintiff Danny L. James.

74.   The foregoing combination of two or more persons was formed for the purpose of injuring Plaintiff Danny L. James.

75.    Plaintiff Danny L. James is entitled to recover compensatory damages for civil conspiracy against the Defendants in an amount to be proven at trial, together with costs of this action

### COUNT VII – PUNITIVE DAMAGES AGAINST DEFENDANTS

76.    Plaintiff incorporates by reference paragraphs 1 through 75 of this Complaint.

77.    The acts of the Defendants showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

78.    Plaintiff Danny L. James is entitled to recover punitive damages against Defendants in an amount to be proven at trial, without any limitation, as set forth in O.C.G.A. § 51-12-5.1(e)(1).

Respectfully submitted, this 23rd day of November, 2011.

Respectfully submitted,

/s/Wallace Harrell
**Wallace Harrell**
Georgia Bar No. 328800
GILBERT, HARRELL, SUMERFORD &
MARTIN, P.C.
777 Gloucester Street, Suite 200
Brunswick, GA  31520
(912) 265-6700
wharrell@gilbertharrelllaw.com

24

**C. Neal Pope**
Georgia Bar No. 583769
**George W. Walker**
Georgia Bar No. 548316
POPE, McGLAMRY, KILPATRICK,
MORRISON & NORWOOD, LLP
1111 Bay Avenue, Suite 450
P.O. Box 2128 (31902-2128)
Columbus, GA  31901-2412
(706) 324-0050
Fax (706) 327-1536
efile@pmkm.com

**Michael L. McGlamry**
GA Bar No. 492515
**N. Kirkland Pope**
Georgia Bar No. 584255
POPE, McGLAMRY, KILPATRICK,
MORRISON & NORWOOD, LLP
3455 Peachtree Road, N.E., Suite 925
P.O. Box 191625 (31119-1625)
Atlanta, GA  30326-3256
(404) 523-7706
Fax (404) 524-1648
efile@pmkm.com

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

/s/Wallace Harrell
**Wallace Harrell**
Georgia Bar No. 328800
GILBERT, HARRELL, SUMERFORD &
MARTIN, P.C.
777 Gloucester Street, Suite 200
Brunswick, GA  31520
(912) 265-6700
wharrell@gilbertharrelllaw.com

**C. Neal Pope**
Georgia Bar No. 583769
**George W. Walker**
Georgia Bar No. 548316
POPE, McGLAMRY, KILPATRICK,
MORRISON & NORWOOD, LLP
1111 Bay Avenue, Suite 450
P.O. Box 2128 (31902-2128)
Columbus, GA  31901-2412
(706) 324-0050
Fax (706) 327-1536
efile@pmkm.com

**Michael L. McGlamry**
GA Bar No. 492515
**N. Kirkland Pope**
Georgia Bar No. 584255
POPE, McGLAMRY, KILPATRICK,
MORRISON & NORWOOD, LLP
3455 Peachtree Road, N.E., Suite 925
P.O. Box 191625 (31119-1625)
Atlanta, GA  30326-3256
(404) 523-7706
Fax (404) 524-1648
efile@pmkm.com

26