IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: WRIGHT MEDICAL TECHNOLOGY INC., CONSERVE HIP IMPLANT PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 2329<br><br>This Document Relates to:<br>ROBYN CHRISTIANSEN<br>1:13-cv-297-WSD |
| ROBYN CHRISTIANSEN,<br><br>    Plaintiff,<br><br>v.<br><br>WRIGHT MEDICAL TECHNOLOGY INCORPORATED and WRIGHT MEDICAL GROUP, INC.,<br><br>    Defendants. | 1:13-cv-297-WSD |

**OPINION AND ORDER**

This matter is before the Court on Defendants Wright Medical Technology, Inc.'s ("Wright Medical") and Wright Medical Group, Inc.'s (together, "Defendants") and Plaintiff Robyn Christiansen's ("Plaintiff") (together with Defendants, the "Parties") "Position Statements Regarding Witness/Evidentiary Issues," (the "Position Statement") which the Court construes as a motion *in limine*.

I.     **BACKGROUND**[1]

Plaintiff filed this action based on the failure of the Conserve Hip Implant System that was surgically implanted by Dr. Lynn G. Rasmussen on April 24, 2006, to replace Plaintiff's right hip.  The claims to be tried are: (1) Strict Product Liability (Design Defect) (Count I); (2) Negligence (Design Default) (Count III); (3) Fraudulent Misrepresentation (Count V); (4) Fraudulent Concealment (Count VI); and (5) Negligent Misrepresentation (Count VII). (Second Am. Compl. [11] ¶¶ 32-109; August 31, 2015, Order, [167] at 122). Plaintiff seeks compensatory damages and punitive damages.  (Second Am. Compl. at 42; August 31, 2015, Order, at 122).

On September 21, 2015, the Court ordered the Parties to file motions *in limine* on or before October 2, 2015.  (September 21, 2015, Order, [170] at 1). This case is set for trial on November 9, 2015.  (Id. at 2).  On October 2, 2015, the Parties timely filed their motions *in limine*.[2, 3]

---

[1]     In the "Introduction" and "Background" sections of its August 31, 2015, Order, [167] the Court set forth the factual and procedural background for this case. (August 31, 2015, Order, at 1-9).  These sections are incorporated by reference.  The Court here discusses only the background relevant to the Position Statement.

[2]     The Court's Order addressing the Parties' motions *in limine* was entered on October 30, 2015.  (See [192]).

2

On October 29, 2015, well after the deadline to file motions *in limine* expired, the Parties sent the Court their 27-page Position Statement, which identifies three separate evidentiary issues.

Defendants ask the Court to decide:

> Whether Plaintiff can bring certain orthopedic surgeons, named on the witness list, to provide fact testimony concerning their interaction with Wright Medical, their expectation of the Conserve devices at issue and their success or lack thereof with the Conserve device.

(Position Statement at 1). Plaintiff asks the Court to decide:

> (1) Whether opinion testimony should be limited to the Wright Conserve Total Hip Implant and not include testing and/or experience with the Wright Conserve Resurfacing Device and (2) whether Defendants can utilize or introduce testimony concerning a previously undisclosed private investigator's report.

(Id. at 11, 24).

## II. DISCUSSION

A. <u>Whether Plaintiff can bring certain orthopedic surgeons, named on the witness list, to provide fact testimony concerning their interaction with Wright Medical, their expectation of the Conserve devices at issue and their success or lack thereof with the Conserve device</u>

Plaintiff intends to call as fact witnesses four orthopedic surgeons who have never treated Plaintiff or otherwise been involved in her care. The witnesses are:

---

[3] The Parties also filed their Joint Stipulation of Agreed To *In Limine* Topics [173] (the "Stipulation"), which lists thirty-six (36) categories of evidence the Parties agree that neither side will seek to admit or refer to at trial.

(1) Paul Lux, MD; (2) Brad Penenberg, MD; (3) Jason Snibbe, MD; and (4) Myron Stachniw, MD (together, the "Witnesses").  (Position Statement at 2).  Plaintiff intends to have the Witnesses discuss: "1) their interactions with Wright Medical, 2) their expectations for the products, and 3) their success or lack thereof with the products."  (Id. at 3) (emphasis removed).

"Under the Utah Product Liability Act, a product is defective if it is 'unreasonably dangerous' at the time of sale by the manufacturer." Gudmundson v. Del Ozone, 232 P.3d 1059, 1071 (Utah 2010) (citing Utah Code Ann. § 78B-6-703(1)).  A product is "unreasonably dangerous" if

> the product was dangerous to an extent beyond which would be contemplated by the ordinary and prudent buyer, consumer, or user of that product in that community considering the product's characteristics, propensities, risks, dangers, and uses together with any actual knowledge, training, or experience possessed by that particular buyer, user, or consumer.

Utah Code Ann. § 78B-6-702.

The Tenth Circuit has construed Section 78B-6-702 as having "two components to the product's perceived dangers: (1) an ordinary person's understanding of the product, 'together with' (2) the understanding possessed by the particular person."  Brown v. Sears, Roebuck & Co., 328 F.3d 1274, 1282 (10th Cir. 2003).  Section 78B-6-702 imposes "an objective consumer expectations test and supplementing it with a subjective test based on the individual knowledge,

training, and experience of the particular buyer, user, consumer, or, possibly, victim." Id.  The objective test is satisfied if the product is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." Id. at 1280.

The Parties appear to agree that the ordinary consumer and community for the Conserve Hip Implant System are orthopedic surgeons.  Plaintiff argues that the testimony of the Witnesses as to their expectations of the Conserve Hip Implant System is relevant to show that the Conserve Hip Implant System was "unreasonably dangerous"  because it was "dangerous to an extent beyond that which would be contemplated by" orthopedic surgeons.  (Position Statement at 9-10).  Defendants argue that the Witnesses' expectations of the Conserve Hip Implant System when implanted in different patients do not have any bearing on Plaintiff's claims, and this testimony is actually expert testimony that was not appropriately identified and disclosed.  (Id. at 3-4).  Defendants argue also that the Witnesses are not "objective consumers" because they have outlier failure rates and have expressed biases against the Conserve Hip Implant System.  (Id.)

The Witnesses' testimony is relevant to Plaintiff's design defect claim, but in a limited way.  The testimony is allowable to show what an ordinary consumer

5

of the Conserve Hip Implant System expected from the product so the jury can determine if the device was "dangerous to an extent beyond which would be contemplated by the ordinary [consumer]."  See, e.g., Utah Code Ann. § 78B-6-702.  As users of the product at issue in this action, the Witnesses can state their expectations of the Conserve Hip Implant System as one to replace a natural hip.  They may, for example, testify (i) that they expected the Conserve Hip Implant System to provide a functional equivalent of the replaced hip; (ii) that the replacement device would allow normal or near normal activities; (iii) what they expected as the useful life of the device, including as based upon the different levels of physical activity expected of patients; and (iv) the range of risks expected with the device.  This is the sort of limited expectation testimony that is allowable because it is the "ordinary customer" evidence that is relevant to Plaintiff's claim under Utah's product liability law.[4]  That is, the Witnesses are part of the community whose expectations are relevant under Section 78B-6-702, and their testimony, as limited above, is admissible for this limited purpose.  See Fed. R. Evid. 401; Brown, 328 F.3d at 1282.

   To the extent Plaintiff seeks to offer testimony regarding the Witnesses' interactions with Defendants, Defendants argue this testimony is irrelevant because

---

[4]   Plaintiff will elicit testimony about the design of the Conserve Hip Implant System from her expert witnesses.  (Position Statement at 10)

the Witnesses did not treat Plaintiff and the communications would have occurred after Plaintiff's April 24, 2006, implantation surgery. (Position Statement at 3). Plaintiff argues that Defendants' statements to the Witnesses prior to Plaintiff's implantation surgery in marketing the Conserve Hip Implant System are relevant to support Plaintiff's fraudulent misrepresentation, fraudulent concealment, and other common-law claims. (Id. at 11). Plaintiff argues specifically that pre-April 24, 2006, statements made by Defendants show Defendants' intent and knowledge, and that the misrepresentations made to Dr. Rasmussen were not made by mistake. (Id.).[5]

Statements by and interactions with Defendants that were made or occurred before Plaintiff's April 24, 2006, implantation surgery, may be relevant to support the expectations of the Witnesses regarding the Conserve Hip Implant System. The Court, however, in the absence of the specific statements the Witnesses claim were made to them, cannot rule on the admissibility of the Witnesses' testimony that Plaintiff seeks to offer. The Court, at trial, will rule on objections to testimony about statements made to, or interactions with, the Witnesses and whether they are

---

[5] Plaintiff does not argue that Defendants' statements to the Witnesses made after Plaintiff's April 24, 2006, implantation surgery, are relevant. (Position Statement at 10). Post-surgery statements by and interactions with Defendants do not have a "tendency to make a fact more or less probable than it would be without the [admission of this] evidence," and they are not relevant and are excluded. Fed. R. Evid. 401

relevant to the Witnesses' expectation testimony. If testimony on these matters is allowed, the Court will provide the following limiting instruction: "The Plaintiff has introduced evidence of statements made by, or interactions with, the Defendants. This evidence is offered for a limited purpose. Specifically, you may consider it only in connection with the witness' testimony regarding the witness' expectations regarding the Conserve Hip Implant System." The Court notes that interactions between the Witnesses and Defendants are not relevant to the information Defendants conveyed to Dr. Rasmussen and upon which Dr. Rasmussen relied in deciding to use the Conserve Hip Implant Device implanted to replace Plaintiff's hip.[6]

Finally, Defendants argue that testimony about the Witnesses' success or lack thereof with the Conserve Hip Implant System is not admissible including because it would violate Plaintiff's stipulation not to offer evidence of revision and failure rates. (Id. at 4-5).

---

[6] The Court similarly excluded from trial evidence of marketing materials not actually read or relied upon by Dr. Rasmussen. (See October 30, 2015, Order, at 36). If, as with the unread marketing materials, Plaintiff contends at trial that the evidence presented by Defendants provides a basis to admit interactions between the Witnesses and Defendants, or Defendants' statements to the Witnesses, Plaintiff may, out of the presence of the jury, state the basis for seeking the admission of this evidence.

Plaintiff apparently seeks to introduce testimony from the Witnesses that they witnessed failure rates that ranged from 15% to 25% for the Conserve Hip Implant System.  Plaintiff does not explain how these failure rates are relevant to any issue in this case concerning a failure based upon a specific alleged defect.  See Fed. R. Evid. 401.  Testimony from the Witnesses about device failures they claim their patients suffered generally is not relevant and, if allowed, would require a mini-trial on each of the failures to determine if the failures occurred for the same alleged reasons that Plaintiff's device failed.  Even if this evidence was relevant—which the Court concludes it is not—it would result in confusion of the issues, mislead the jury, and cause undue delay.  For this additional reason, this evidence is excluded.  See Fed. R. Evid. 403.

Finally, having limited the testimony of the Witnesses to the issue of product expectations, the Court determines that four witnesses on this issue would be cumulative.  See Fed. R. Evid. 403.  The Court allows Plaintiff to call two Witnesses to offer testimony on product expectations.

> B. Whether opinion testimony should be limited to the Wright Conserve Total Hip Implant and not include testing and/or experience with the Wright Conserve Resurfacing Device

Plaintiff expects that Defendants will offer testimony at trial about Defendants' experience with the Conserve Plus Total Resurfacing Hip System

9

product line.  (Position Statement at 11, 18-19).  Plaintiff argues that the Court should exclude testimony or evidence about Defendants' experience with the Conserve Plus Total Resurfacing Hip System because the Court previously ruled it is distinct from the Conserve Hip Implant System.  (Id.; August 31, 2015, Order at 74, 96).  Plaintiff claims that evidence of Defendants' experience with the Conserve Plus Total Resurfacing Hip System will "open the door" to evidence about any metal-on-metal hip device on the market.  (Position Statement at 19).

Defendants argue that evidence of Defendants' design, testing, and clinical experiences with the Conserve Plus Total Resurfacing Hip System is relevant to the design process by which Defendants developed the Conserve Hip Implant System including because the Conserve Plus Total Resurfacing Hip System also presented the risk of exposure to metal ions, the defect claimed by Plaintiff in this case.  (Position Statement at 21-22).  The Conserve Plus Total Resurfacing Hip System was the design predecessor of the Conserve Hip Implant System, and Defendants' experiences with the Conserve Plus Total Resurfacing Hip System explain the rationale behind the design of the newer Conserve Hip Implant System.  (Id.).[7]

---

[7]   Defendants contend that to exclude this evidence would suggest to the jury that Defendants, before they designed, marketed, and sold the Conserve Hip

A principal issue in this case is how Defendants developed their design of the metal-on-metal Conserve Hip Implant System. The Conserve Plus Total Resurfacing Hip System, while a device distinct from the Conserve Hip Implant System, contains the same metal-on-metal parts at issue in this case and Defendants contend it informed Defendants in their design and production of the Conserve Hip Implant System. Evidence regarding the Conserve Plus Total Resurfacing Hip System, for the purpose of explaining Defendants' experience with metal-on-metal parts, is relevant to the design issues in this litigation, including the issue of alleged misrepresentations, to refute Plaintiff's claim about metal ion release and to refute any claims that Defendants did not have sufficient experience in producing metal-on-metal products. See Fed. R. Evid. 401. Finally, it is relevant and probative on the issue of punitive damages. Evidence of Defendants' design, testing, and clinical experiences with the Conserve Plus Total Resurfacing Hip System is admissible.[8]

---

Implant System, had no experience with metal bearing surfaces and metal-on-metal joint replacement devices. (Position Statement at 21-22).

[8] If Defendants offer testimony about their experiences with the Conserve Plus Total Resurfacing Hip System, the Court will provide the following limiting instruction: "The Defendants have introduced evidence of their design experiences with the Conserve Plus Total Resurfacing Hip System, a device distinct from the Conserve Hip Implant System at issue in this case. This evidence is offered for a limited purpose. Specifically, you may consider it only in connection with Defendants' experience with metal-on-metal parts as it relates to their design and

      C.    <u>Whether Defendants can utilize or introduce testimony concerning a previously undisclosed private investigator's report</u>

Defendants listed on their trial exhibit list an October 16, 2015, a report of surveillance of Plaintiff, along with corresponding videos and photos. (Position Statement at 25). Defendants also now have an October 26, 2015, report of surveillance of Plaintiff, along with corresponding videos and photos. (<u>Id.</u>). Defendants intend to offer these reports and visual evidence to impeach Plaintiff if she testifies inconsistently with her December 16, 2014, deposition testimony, in which she testified she was maintaining an active lifestyle, free of pain or restrictions.

"[I]mpeachment evidence is admissible if it goes to credibility, even though it introduces evidence which would be otherwise inadmissible." <u>State v. Reed</u>, 820 P.2d 479, 481 (Utah Ct. App. 1991); <u>see also</u> Fed. R. Evid. 608(b). Surveillance of a plaintiff is also permissible conduct. <u>See, e.g.</u>, <u>Roundy v. Staley</u>, 984 P.2d 404 (Utah App. Ct. 1999). The Court notes that, by its nature, surveillance evidence to ascertain whether a plaintiff is still suffering from an alleged injury may need to be conducted closer to trial, after discovery deadlines have passed. Defendants' evidence of Plaintiff's physical abilities may well be

---

production of the Conserve Hip Implant System, and to the Defendants' representations about the Conserve Hip Implant System to Dr. Rasmussen."

12

admissible on Plaintiff's damage claim, especially if she testifies as to any current physical limitations, discomfort, or pain as a result of the failure of the Conserve Hip Implant System and required revision surgery.  See Fed. R. Evid. 608(b).

## III.    CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff is entitled to offer the testimony of two of the following witnesses: (1) Paul Lux, MD; (2) Brad Penenberg, MD; (3) Jason Snibbe, MD; and (4) Myron Stachniw, MD (together, the "Witnesses"). The two testifying Witnesses are entitled to testify, as orthopedic surgeons, about their expectations regarding the Conserve Hip Implant System as one to replace a natural hip, including, for example, their expectations that the device would allow normal or near normal activities, the useful life of the device, and the range of risks expected with the device.

The Witnesses are precluded from testifying about their post-April 24, 2006, interactions with Defendants or Defendants' statements, and about the failure rates they experienced with the Conserve Hip Implant System.  The Court **RESERVES** for trial its ruling on whether testimony of the Witnesses' interactions with Defendants, or statements made by Defendants, that occurred before Plaintiff's April 24, 2006, implantation surgery, and that informed their expectations about

the Conserve Hip Implant System, is admissible. The Court, at trial, will rule on objections to testimony about specific statements made to, or interactions with, the Witnesses and whether they are relevant to the Witnesses' expectation testimony.[9]

**IT IS FURTHER ORDERED** that evidence of Defendants' design, testing, and clinical experiences with the Conserve Plus Total Resurfacing Hip System, for the purpose of explaining Defendants' experience with metal-on-metal parts, is admissible.[10]

**IT IS FURTHER ORDERED** that evidence of surveillance of Plaintiff is admissible to impeach Plaintiff if she testifies at trial that she currently suffers from any physical limitations, discomfort, or pain based on the failure of the Conserve Hip Implant System, the revision surgery, and the injuries she alleges she suffered related to the failure.

**SO ORDERED** this 2nd day of November, 2015.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

[9] If statement or interaction testimony is admitted, it will be admitted subject to the limiting instruction described on page 8 of this Order.

[10] Subject to the limiting instruction described in footnote 8 of this Order.