IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| IN RE: WRIGHT MEDICAL TECHNOLOGY, INC. CONSERVE HIP IMPLANT PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br>ALL CASES | CIVIL ACTION NO.<br>1:12-md-02329-WSD |

**PLAINTIFFS' MOTION TO ESTABLISH QUALIFIED SETTLEMENT FUND AND TO APPOINT A QSF ADMINISTRATOR**

Plaintiffs' Co-Lead Counsel ("Plaintiffs' Counsel"), on behalf of all Claimants ("Plaintiffs") enrolled in the Wright Medical Hip Implant Settlement Program, in order to settle claims against Wright Medical Technology, Inc. ("Wright Medical") and Wright Medical Group, Inc. as set forth in the Settlement Agreement signed by Plaintiffs' Counsel and Wright Medical on November 1, 2016, move this Court for an Order:  (i) to establish a Qualified Settlement Fund as contemplated by Section 10.6 of the Wright CONSERVE® Hip Implant Litigation Settlement Agreement ("MSA"), which shall be called the "Wright Hip Qualified Settlement Fund" (the "QSF"); (ii) to appoint Providio MediSolutions LLC ("Providio"), as the Administrator of the QSF (the "QSF Administrator"); (iii) to appoint The Huntington National Bank ("the Bank") as the trustee and as the

financial institution that will hold the QSF proceeds; and (iv) to approve investment vehicles for the QSF.  In support of this Motion, Plaintiffs' Counsel respectfully states as follows:

1. Plaintiffs' Counsel have conferred with Wright Medical's counsel and they have agreed to the filing of this Motion, the relief sought by the Plaintiffs and Claimants and to the Proposed Order attached hereto as *Exhibit A*.

2. On November 1, 2016, Plaintiffs' Counsel and Wright Medical entered into the MSA on behalf of Eligible Claimants asserting claims for alleged physical bodily injury arising out of alleged liability in tort or violation of law.

3. Pursuant to Section Two and Paragraph 10.6 of the MSA, assuming all conditions precedent are satisfied, Wright Medical is obligated to pay up to $240,000,00.00 ("Total Settlement Payment") which shall fund payments into a Qualified Settlement Fund, which is to be established by Plaintiffs' Counsel and its advisors in accordance with Treasury Regulations § 1.468B-1, *et seq*.

4. This Court has jurisdiction over this matter by Order of the United States Judicial Panel on Multidistrict Litigation dated February 8, 2012, and all Plaintiffs and Claimants enrolled in the Wright Medical Hip Implant Settlement Program have submitted to this Court's exclusive jurisdiction pursuant to Section 3.2.6 of the MSA.  This Court has the authority to establish a Qualified

Settlement Fund under Treas. Reg. Section 1.468B-1(c)(1), which states in relevant part that a Qualified Settlement Fund "is established pursuant to an order of, or is approved by, the United States, any state (including the District of Columbia), territory, possession, or political subdivision thereof, or any agency or instrumentality (including a court of law) . . . and is subject to the continuing jurisdiction of that governmental authority."

5. Plaintiffs' Counsel request that the Court order the establishment of the QSF and approve Providio as QSF Administrator. Providio possesses extensive experience administering Qualified Settlement Funds in different causes of action nationwide, most recently administering the Qualified Settlement Fund in the *Stryker Rejuvenate and ABGII Hip Implant Products Liability Litigation MDL No. 13-2441* in the United States District Court for the District of Minnesota. Providio is also the Lien Resolution Administrator for both the Stryker Rejuvenate and ABGII Settlement Program and the Wright Medical Hip Implant Settlement Program. Providio's address is as follows: 5613 DTC Parkway, Suite 700, Greenwood Village, CO 80111. Providio, by agreement, submits to the jurisdiction of this Court. In the event of any potential dissolution or bankruptcy of Providio, its appointment as QSF Administrator shall terminate and Plaintiffs' Counsel will seek Court approval of their nominated successor QSF Administrator.

6. Plaintiffs' Counsel intends that the QSF be a trust under the laws of Georgia and plans to execute a trust instrument in substantial form as identified in the attached *Exhibit B* ("Trust Agreement") with the Bank as the trustee of the trust. Providio will serve as administrator of the QSF trust pursuant to order of this Court issued in connection with this Motion.

7. The Bank will obtain a Federal Taxpayer Identification Number for the QSF upon the execution of an Order by this Court establishing the QSF and, thereafter, the QSF Administer shall work with the Bank to establish a bank account for the QSF. The QSF Administrator shall administer the QSF pursuant to the explicit terms of the MSA and Order of this Court issued in connection with this Motion.

8. The QSF, by and through the QSF Administrator, shall only make payments to the Plaintiffs, law firms representing Plaintiffs for their attorney fees and litigation expenses, any entities asserting a claim of subrogation in accordance with the terms of the MSA, and the releases signed by Plaintiffs and/or an entity to effect qualified assignments of any structured settlement liability or similar vehicle within the meaning of Section 130(c) of the Internal Revenue Code to the qualified assignee (including, without limitation, trustees for special needs trusts). The QSF Administrator shall be authorized to distribute funds to the Plaintiffs in a partial

manner holding in reserve funds sufficient to cover medical insurance subrogation/Medicare qualified payment liens identified by the Lien Resolution Administrator.

9. The Total Settlement Payment or any portion thereof is the sole property of the QSF. No portion of the QSF shall be made available to Plaintiffs in any fashion, except as specifically set forth in the MSA, and/or the releases of the individual claims. Until such time as monies are distributed, the Plaintiffs and their counsel shall not possess any rights to demand or receive any portion of the settlement proceeds or the escrowed funds or to mortgage, pledge, or encumber the same in any manner. This Motion seeks an Order intended to prevent the Plaintiffs and their counsel from being in constructive receipt, as determined under federal income tax principles, of any amounts held by the QSF, to facilitate Special Needs Trusts and structured settlement annuities and avoid triggering loss of benefits and/or tax liabilities.

10. The QSF Administrator, by agreement, shall be indemnified and held harmless by Plaintiffs' Counsel from any claims made by any alleged lien holder, or other person or entity that attempts to assert a right of payment, reimbursement or garnishment against the QSF. Should the QSF Administrator be named as a party to, or threatened to be made a party to, any threatened, pending or completed

action, suit or proceeding of any kind, whether civil, administrative or arbitrative, and whether brought by or against or otherwise involving the QSF, by reason of the QSF Administrator having served in any capacity on behalf of the QSF, the QSF Administrator shall be indemnified and held harmless by Plaintiffs' Counsel against reasonable expenses, costs and fees (including attorney fees), judgment, awards, costs, amounts paid in settlement, and liabilities of all kinds incurred by the QSF Administrator in connection with or resulting from such actual or threatened action, suit or proceeding; except to the extent that it is finally determined by this Court that the QSF Administrator was negligent or failed to comply with the terms of the releases and closing statements in connection with the administration of the QSF.

11.   As provided in Section 11.1 of the MSA, Wright Medical will not be liable to pay additional sums under the MSA due to any action, inaction, or default by another person or entity in the establishment or administration of the QSF.

12.   Plaintiffs' Counsel request that no bond be required, provided that all monies received by the QSF, which include all principal and interest earned thereon, shall be deposited by the QSF Administrator in an account held in custody at the Bank, a financial institution with headquarters in Columbus, Ohio, for the

benefit of and titled in the legal name of the QSF and invested solely in one or more deposit accounts at the Bank with full FDIC insurance coverage.

13.     Providio and the Bank agree that any amounts held by the QSF: (1) will be held in a fiduciary capacity; and (2) shall comply with the Treasury Regulations Section 1.468B-1, *et seq.*  Further, the QSF account shall remain subject to the continuing jurisdiction of this Court until such funds are distributed in their entirety or upon further order of this Court.

14.     QSF Administrator shall be responsible for the investment related decisions for the QSF and shall so direct the Bank, provided that the following investment policy is implemented:  (1) safety of principal; (2) zero bank balance exposure; and/or (3) the use of zero sweep disbursement accounts to ensure funds remain in custodial or fully insured accounts to avoid an impermissible risk of loss should the financial institution holding the funds fail.

15.     The Bank shall not distribute any income or principal from the QSF except upon instructions of the QSF Administrator, or, if requested, upon the order of this Court upon the motion of one of the parties.

16.     Plaintiffs' Counsel may request the right to remove the Bank and seek Court approval of the nominated replacement bank.

17. The QSF Administrator shall not be liable for any losses as a result of investing the deposit of the Total Settlement Payment (the "Deposit"). Any such losses shall not be recoverable from Plaintiffs' Counsel and/or Wright Medical, and the parties and their counsel shall have no responsibility for the QSF Administrator's performance. Receipt and/or investment of the Deposit shall be confirmed by the QSF Administrator as soon as practicable by QSF account statement or other reasonable method not to exceed 15 days from receipt of the funds by the Bank.

18. All taxes on the income of the QSF and expenses and costs incurred in connection with the taxation of the QSF (including, without limitation, the expenses of tax attorneys, accountants, or other necessary and related services ) shall be paid out of the income generated by the QSF or the Common Benefit Expense Account should the QSF income not be sufficient, shall be considered to be a cost of administration of the settlement, and shall be paid as instructed by the QSF Administrator. No cost or expense incurred in the administration of the QSF will be paid from the principal of the QSF.

19. Within fifteen (15) calendar days following the last day of every calendar quarter or upon request, the QSF Administrator will prepare and deliver Fund Statements ("Statements") to Plaintiffs' Counsel and to this Court if the

Court so requests.  The Statements shall include a statement of receipts, investment earnings, interest, and disbursements.

20. Upon final distribution of all monies paid into the QSF, the QSF Administrator shall take appropriate steps to work with the Bank to wind down the QSF and thereafter be discharged from any further responsibility with respect to the QSF.

**WHEREFORE,** for the foregoing reasons, Counsel respectfully requests that this Court consent to take continuing jurisdiction over the QSF pursuant to Treasury Regulation Section 1.468B-1(c)(1), and issue an Order (attached hereto as *Exhibit A*) as follows:

1. Establish the said QSF as a Qualified Settlement Fund within the meaning of Treasury Regulation Section 1.468B-1;

2. Appoint Providio as the QSF Administrator pursuant to the terms, conditions and restrictions of this Motion, thereby granting the QSF Administrator the authority to conduct any and all activities necessary to administer the QSF as described in this Motion and the MSA;

3. Appoint The Huntington National Bank as the Trustee and Bank pursuant to the terms, conditions and restrictions of this Motion, thereby granting the Bank/Trustee the authority to conduct any and all

activities necessary to hold, invest and disburse the Deposit proceeds pursuant to instructions from the QSF Administrator in accordance with this Motion and the MSA;

4. Authorize Providio as the QSF Administrator to effect qualified assignments of any resulting structured settlement liability or similar vehicle within the meaning of Section 130(c) of the Internal Revenue Code to the qualified assignee;

5. Authorize Providio as the QSF Administrator, upon final distribution of all monies paid into the QSF, to take appropriate steps to work with the Bank to wind down the QSF and thereafter discharge the QSF Administrator from any further responsibility with respect to the QSF.

This 14th day of July, 2017.

Respectfully submitted,

*/s/ Michael L. McGlamry*
Michael L. McGlamry
Georgia Bar No. 492515
POPE, McGLAMRY, KILPATRICK,
MORRISON & NORWOOD, P.C.
3391 Peachtree Road, NE, Suite 300
P.O. Box 191625 (31119-1625)
Atlanta, GA  30326
P: (404) 523-7706
F: (404) 524-1648
efile@pmkm.com

*Plaintiffs' Co-Lead Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was electronically filed with this Court's CM/ECF on this 14th day of July, 2017 and was thus served electronically upon all counsel of record.

                                   */s/ Michael L. McGlamry*
                                   Michael L. McGlamry
                                   Georgia Bar No. 492515